UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HERBERT LEE, JR.                                                                                          PLAINTIFF

VS.                                                          CIVIL ACTION NO.: 3:14cv652-DPJ-FKB

JEFF WEILL, SR., ET AL.                                                                              DEFENDANTS

ORDER

This civil-rights dispute is before the Court for consideration of dismissal and sanctions. Attorney Herbert Lee sues his former clients Gloria Thompson and Deborah Dixon while also bringing official-capacity claims against the following Mississippi judges: William L. Waller, Jr., Ann H. Lamar, Randy G. Pierce, Jess H. Dickinson, David A. Chandler, and Jeff Weill, Sr. All Defendants seek dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Thompson and Dixon also seek Rule 11 sanctions. Because the *Rooker-Feldman* doctrine applies to all claims, all motions are GRANTED.

I.      Background

The facts of this dispute are somewhat lengthy yet largely irrelevant. In general terms, Lee is an African-American attorney who represented Thompson and Dixon in diet-drug litigation against American Home Products ("AHP"). Compl. [1] ¶ 8. Although many diet-drug cases were sent to multi-district litigation ("MDL"), Lee's cases were never removed or consolidated. *Id.* ¶ 12. Despite that, the current dispute arises from certain orders entered by the MDL court.

In particular, the MDL court established a Common Benefit Fund ("CBF") to reimburse attorneys who developed discovery that was shared with other participating attorneys. *Id.* ¶ 17. The CBF was funded by withholding some settlement proceeds in diet-drug cases—even in

unconsolidated state-court cases—so long as the state-court attorney used the shared discovery. *Id.* ¶¶ 20, 22. Lee signed an agreement to participate in this program, *id.* ¶ 19, and when Thompson and Dixon settled their disputes with AHP, AHP deposited funds into the CBF, *id.* ¶ 33.

Eventually, the MDL court ordered a partial refund from the CBF, and Lee distributed the funds to Thompson, Dixon, and other clients. *Id.* ¶¶ 47–50. But Thompson, Dixon, and Lee disputed the way the funds were distributed. According to Thompson and Dixon, Lee was required to disburse the funds in the manner dictated by the MDL court's orders. *Id.* ¶ 59. Lee disagreed and distributed the funds under a different method that reduced the amount Thompson and Dixon received. *Id.* ¶ 60.

Feeling aggrieved, Thompson and Dixon sued Lee in the Circuit Court of Holmes County, Mississippi. *Id.* ¶ 54. The case was then transferred to the Circuit Court of Hinds County, Mississippi, where the trial court found that Lee was required to comply with the MDL court's orders. *Id.* ¶¶ 56, 64. The Mississippi Supreme Court unanimously affirmed that decision, and on remand, a new trial judge calculated the damages. *Id.* ¶¶ 72, 73, 82. Lee again appealed and lost on an unanimous vote by the Mississippi Supreme Court. Pl.'s Mem. [17] at 14.

Lee now contends that the Mississippi Supreme Court's decisions applying the MDL court's orders were arbitrary and capricious and that the court treated Lee less favorably than a white attorney who also disputed CBF disbursement. Lee therefore brought this case against the five Mississippi Supreme Court justices who participated in the two appeals and the trial judge, Jeff Weill, who calculated the damages on remand ("Judicial Defendants"). Compl. [1] ¶¶ 4–5.

Lee also sued Thompson and Dixon for allegedly conspiring with the Judicial Defendants.  *Id.* ¶ 110; *see* Pl.'s Mem. [19] at 18.

In his Complaint, Lee asserts four causes of action under 42 U.S.C. § 1983 for alleged violation of the following rights under the Fourteenth Amendment to the United States Constitution:  (1) procedural due process; (2) substantive due process; (3) equal protection—class of one; and (4) equal protection—race discrimination.  Compl. [1] ¶¶ 110–13.  As his remedies, Lee seeks (1) a declaratory judgment that applying the MDL court's orders to the underlying case violates his constitutional rights, and (2) an injunction preventing Defendants "from seeking and collecting the retained assessment refunds from Lee and from enforcing the orders and judgments of the Hinds County Court and the Supreme Court."  *Id.* ¶¶ 106, 107.

The matter is now before the Court on two Motions to Dismiss [8, 13] and a separate Motion for Sanctions [14].  The Judicial Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(1) and alternatively Rule 12(b)(6) based on (1) the *Rooker-Feldman* doctrine; (2) Eleventh Amendment immunity; and (3) judicial immunity.  Thompson and Dixon join in these theories while also invoking Rule 11.

As discussed below, the Court finds that the *Rooker-Feldman* doctrine applies.  And because it does, the Court will not explore the somewhat murky issues associated with Defendants' other theories when applied to claims for declaratory and injunctive relief.  *See Riley v. La. State Bar Ass'n*, 214 F. App'x 456, 458 (5th Cir. 2007) (per curiam) (declining to reach Eleventh Amendment issues in case barred by *Rooker-Feldman*).

II.     Standard

"A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009) (per curiam) (internal quotation marks omitted). In ruling on a Rule 12(b)(1) motion, "the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts." *Id.* at 649–50 (citing *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)). Finally, the party asserting subject-matter jurisdiction bears the burden of proof. *Id.* at 649.

III.    Analysis

   A.     Subject-Matter Jurisdiction

All Defendants seek dismissal for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine. That doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In other words, it precludes "collateral attacks on state court judgments." *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994).

> A state court judgment is attacked for purposes of Rooker–Feldman "when the [federal] claims are 'inextricably intertwined' with a challenged state court judgment," *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 350 (5th Cir. 2003), or where the losing party in a state court action seeks "what in substance would be appellate review of the state judgment." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S. Ct. 2647, 129 L. Ed. 2d 775 (1994). The doctrine, however, does not preclude federal jurisdiction over an "independent claim," even "one that denies a legal conclusion that a state court has reached."

> *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).

*Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (per curiam) (alteration in original).

Lee acknowledges *Rooker-Feldman* but argues that his claims survive because (1) they arise from Thompson and Dixon's actions, and (2) he asserts constitutional claims, some of which were not—according to him—available when the state courts ruled. Both arguments lack merit.

1. Whether the Claims are Factually Independent

Though Lee does not use the term "independent," his first argument tracks the "independent-claim" analysis, relying heavily on *Truong v. Bank of America, N.A.*, 717 F.3d 377 (5th Cir. 2013). In *Truong*, the plaintiff (Truong) sued two banks for alleged violation of the Louisiana Unfair Trade Practices and Consumer Protection Law. Truong alleged that the banks "(1) misled the state court into thinking that the executory process evidence was authentic when, in fact, it was not; and (2) misled her into foregoing her opportunity to dispute authenticity in the state-court proceedings." *Id.* at 383. The Fifth Circuit concluded that Truong presented independent claims because she "did not seek to overturn the state-court judgment, and the damages she requested were for injuries caused by the banks' actions." *Id.* Therefore, *Rooker-Feldman* did not apply. *Id.*

Lee attempts to mimic *Truong* by arguing that (1) Thompson and Dixon misled the courts "into thinking that the MDL court's pretrial orders applied"; and (2) Lee was misled into foregoing the opportunity to prove his position. Pl.'s Mem. [17] at 20; Pl.'s Mem. [19] at 15. Lee never pleaded these assertions in his Complaint, and they find no support in the record. But

5

even assuming Lee could support them, *Truong* remains distinguishable and squarely supports dismissal.

To begin with, there exists a fundamental difference between misleading a court regarding the authenticity of a document and simply prevailing on a legal argument. Regardless, Truong's injuries flowed from the banks' acts, and she limited her suit to claims against those parties—she sued no judges. *Truong*, 717 F.3d at 383. Lee takes a very different approach, suing the Judicial Defendants for injuries flowing from their judicial acts. *See* Compl. [1] ¶¶ 110–13 (stating claims against Judicial Defendants for "enforcing" and "applying" the MDL court's orders). Equally significant, Truong's claim survived because she "did not seek to overturn the state-court judgment." *Truong*, 717 F.3d at 383. Lee seeks an order that would do just that. *See* Compl. ¶¶ 106, 107.

These differences are material. As *Truong* states, "'[I]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court." *Id.* at 382–83 (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)). And when a federal plaintiff seeks such relief, not even a fraud committed by the adverse state-court party will overcome the *Rooker-Feldman* doctrine. *Id.* at 383 n.3 (holding that "[t]here is, of course, no general rule that *any* claim that relies on a fraud allegation is an 'independent claim' for *Rooker–Feldman* purposes" (citing *Turner v. Cade*, 354 F. App'x 108, 110–11 (5th Cir. 2009) (per curiam) (holding that *Rooker–Feldman* bars claim that state-court divorce decree was procured through fraud when federal plaintiff sought order voiding decree)).

Finally, Lee's unsupported and conclusory assertion that Thompson and Dixon conspired with the Judicial Defendants is of no moment.  The same allegation was made in *Sookma v. Millard*, where the plaintiff claimed a conspiracy to violate her civil rights by an adverse state-court party and the state-court judges.  151 F. App'x 299, 300 (5th Cir. 2005) (per curiam) (cited with approval in *Truong*, 717 F.3d at 383 n.3).  Like Lee, the plaintiff sought an injunction preventing "defendants from enforcing the state court . . . decree." *Id.*  The district court dismissed, and the Fifth Circuit held that the appeal was frivolous.  *Id.* at 301 (noting that *Rooker-Feldman* applied and that plaintiff waived other arguments by failing to address them).  Lee has not presented a factually independent claim.

2. Whether the Claims Constitute Independent Civil-Rights Claims

In his final effort to avoid *Rooker-Feldman*, Lee characterizes his claims as constitutional challenges he could not have brought in state court.  *See* Pl.'s Mem. [17] at 20–21.  But in his response, Lee ignores Defendants' key argument on this point—that federal plaintiffs may not avoid *Rooker-Feldman* by recasting their complaints as civil-rights actions.  *See* Defs.' Mem. [9] at 11.

Defendants' argument is not novel; it follows a

> lengthy line of decisions in [the Fifth Circuit], commencing with *Sawyer v. Overton*, 595 F.2d 252 (1979) and *Kimball v. The Florida Bar*, 632 F.2d 1283 (1980), hold[ing] that litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits.  Nor is the principle stated limited to actions . . . which candidly seek review of the state court decree; it extends to others in which "the constitutional claims presented [in federal court] are inextricably intertwined with the state court's" grant or denial of relief.

*Hale v. Harney*, 786 F.2d 688, 690–91 (5th Cir. 1986) (third alteration in original) (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983)).  For these purposes, federal claims

Case 3:14-cv-00652-DPJ-FKB   Document 30   Filed 01/15/15   Page 8 of 10

are "inextricably intertwined" with state-court judgments when "the District Court is in essence being called upon to review the state court decision. This the District Court may not do." *Feldman*, 460 U.S. at 482 n.16.

Yet that is precisely what Lee seeks. Each count of his Complaint contends that the Judicial Defendants violated his constitutional rights by "enforcing" or "applying" the MDL court's orders. Compl. [1] ¶¶ 110–13. And Counts II through IV assert that this same holding was "arbitrary and capricious." *Id.* ¶¶ 111–13. Such arguments require review of the state-court holdings.

The result is no different for Lee's race-based discrimination claim. *See Feldman*, 460 U.S. at 486 (finding no jurisdiction to hear equal-protection claim based on state court's allegedly "unreasonabl[e] and discriminator[y]" decision); *see also Riley*, 214 F. App'x at 458–59 (finding no jurisdiction to hear race-based equal-protection claim because it was "inextricably intertwined" with state-court decision).[1]

For these reasons, the *Rooker-Feldman* doctrine applies. And it applies to all claims against all Defendants. While Thompson and Dixon were adverse state-court parties like the banks in *Truong*, Lee pursues no claims for damages from them separate from the declaratory and injunctive relief discussed above. That relief constitutes an impermissible collateral attack. *Truong*, 717 F.3d at 383. Defendants' motions to dismiss are granted.

---

[1] Lee argues that he could not have pursued his constitutional arguments because they "did not occur until the appellate court's [final] decision." Pl.'s Mem. [17] at 21. This simply recasts the collateral attack. Moreover, Lee had every opportunity to argue for like treatment with the alleged comparator because, according to the Complaint, the disputed decisions regarding Lee occurred after the Mississippi Supreme Court decided the comparator's case in June 2009. *See* Compl. [1] ¶¶ 75, 80, 90.

B.     Rule 11

Thompson and Dixon seek sanctions under Rule 11 of the Federal Rules of Civil Procedure because the Complaint is frivolous as to them and because it contains one allegedly false averment regarding the state-court proceedings.  Though the Court is always circumspect when considering a Rule 11 motion, it agrees that sanctions are appropriate.

Rule 11 provides that an attorney, by presenting a pleading to a court, certifies to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).

As noted above, Lee's claims seek collateral review of the state-court rulings despite long-standing authority precluding such attacks.  Lee makes no argument for modification or reversal of these decisions, nor could he legitimately do so.  And as to Thompson and Dixon specifically, Lee has not pleaded a plausible claim.  At most, Lee asserts that his former clients took him to court, made a legal argument, and prevailed with the trial court and twice on unanimous appeal.  *See* Compl. [1] ¶¶ 59, 61, 64, 67, 69, 71, 74, 76, 78, 80, 81, 82.  Casting this conduct as a conspiracy to violate Lee's civil-rights is at best frivolous.[2]

Turning to Defendants' argument over the wording of paragraph 84 of Lee's Complaint, the Court agrees that it is misleading and that Lee should have known better after the Mississippi

---

[2]For this reason, even if Lee could establish subject-matter jurisdiction, the Court would disregard his bald assertion that Thompson and Dixon conspired with the Judicial Defendants and grant dismissal under Rule 12(b)(6).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Supreme Court admonished him for making a similar statement in the underlying case. In addition, his response to this part of the motion is underwhelming. That said, the averment was essentially immaterial, and the bigger concern is the frivolous nature of this case.

Finally, the Court will not set sanctions at this time. Thompson and Dixon—along with the Judicial Defendants—are all prevailing parties. They are therefore entitled to seek a "reasonable attorney's fee as part of the costs" pursuant to 42 U.S.C. § 1988(b). It may be that a fee award—if sought and granted—will be sufficient to satisfy the goals of Rule 11. Regardless, the Court wants a complete picture before making that ruling. *See Jackson Marine Corp. v. Harvey Barge Repair, Inc.*, 794 F.2d 989, 991–92 (5th Cir. 1986) (holding that trial court can set sanctions on pre-judgment Rule 11 motion after judgment).

III.     Conclusion

Based on the foregoing, the Court finds Defendants' Motions to Dismiss [8, 13] should be granted. Defendants' Motion for Sanctions [14] is granted, but the Court reserves ruling on the amount of sanctions. This action is dismissed with prejudice.

A separate final judgment will be entered in this action in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 15th day of January, 2015.

> s/ *Daniel P. Jordan III*
> UNITED STATES DISTRICT JUDGE